**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ELVIA M. JOHNSON, for )
ASHLEY R. ROBERTS, )
)
Plaintiff, )
) Civil Action No. 06-88
v. )
) Judge Conti
JO ANNE B. BARNHART, ) Magistrate Judge Lenihan
Commissioner of )
Social Security, ) Re: Doc. Nos. 11 & 14
)
Defendant. )

**REPORT AND RECOMMENDATION**

I.   <u>RECOMMENDATION</u>

It is recommended that the Motion for Summary Judgment filed by Plaintiff at

Doc. No. 11 be denied.  It is further recommended that the Motion for Summary Judgment filed

by Defendant at Doc. No. 14 be granted and that the decision of the Commissioner denying

child's Supplemental Security Income (SSI) benefits to the minor Plaintiff be affirmed.

II.   <u>REPORT</u>

This is an action timely filed under the Social Security Act, 42 U.S.C. § 405 (g),

to review a final decision of the Commissioner of Social Security, finding that minor Plaintiff

Ashley R. Roberts [hereinafter "Ashley" or "Plaintiff"] "has asthma and dull normal intellectual

functioning but no severe impairment within the meaning of 20 C.F.R. § 416.924(c)," (Tr. 20,

Finding No. 3) and her "impairment is not of a severity that meets or medically equals the

severity of any impairment listed in Part B of Appendix 1 to Subpart P, 20 C.F.R., Part 404

('Listing of Impairments')," (Tr. 20, Finding No. 5) and she "does not have any marked or extreme limitations in any domain of functioning and does not have any impairments which are functionally equivalent to any impairment listed in Part B of Appendix 1 to Subpart P, 20 C.F.R., Part 404 ('Listing of Impairments')." (Tr. 20, Finding No. 6.)  Plaintiff, through her mother, Elvia Johnson, seeks child's supplemental security income (SSI) benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383(f).  Ashley "has never performed substantial gainful activity." (Tr. 19, Finding No. 2.)  The period adjudicated runs from the protective filing date, June 23, 2003 (Tr. 36-39) through June 24, 2005, the date of the ALJ's decision.[1]

The issue presented by the present appeal is whether there is substantial evidence to support the Commissioner's findings.  42 U.S.C. § 405 (g).  Both parties have filed motions for summary judgment.

A. Facts

Ashley was born on May 5, 1992, and is currently 14 years old.  She lives with her mother.  (Tr. 37, 124.)  She attended Turner Elementary School through sixth grade and Wilkinsburg Middle School in seventh grade.  (Tr. 91, 241.)

1. Summary of Medical Records

In March 2002, Ashley was evaluated at the Asthma and Allergic Disease Center at Children's Hospital by Dr. Jayme Weiner.  (Tr. 123-25.)  The evaluation was requested to

---

[1]Plaintiff had filed a previous application on July 22, 1998 for which it was determined with administrative finality on November 5, 1998 that Ashley was not disabled.  (Tr. 42.)  In addition, Plaintiff indicates that she filed a subsequent application for which the Social Security Administration (SSA) found Ashley to be disabled and entitled to child's SSI from August 1, 2005 to the present.  (Doc. No. 11 at ¶ 9.)

evaluate possible food allergies.  Ashley's mother reported asthma exacerbations about one time

per year, usually driven by an upper respiratory infection.  Ashley reported some respiratory

symptoms with exercise.  The exacerbations were described as shortness of breath and chest

tightness.  The evaluation reflects that she lived with her mother and then 29-year-old sister in

Wilkinsburg in a house with multiple smokers.  Plaintiff's physical examination revealed the

chest clear as to auscultation bilaterally with no wheezes, rales or rhonchi.  Her medications at

that time included Albuterol, Atarax, Singulair, and Keflex.  Dr. Weiner recommended that her

controller medication be changed to Advair.  (Tr. 123-25.)

Ashley's last hospitalization for asthma had been in September 2001, when she

was admitted overnight after presenting in the emergency room for wheezing and coughing.  (Tr.

144-150.)  According to these records, she had been diagnosed with asthma two years ago and

had been hospitalized three times in the past two years.  (Tr. 144-150.)

Progress notes from an April 24, 2003 Well Child Care visit to Children's

Hospital characterize Ashley's asthma as mild persistent, and well controlled on Singulair.  (Tr.

140.)   Likewise, progress notes from a June 19, 2003 Well Child Care visit indicate that

Ashley's asthma was well controlled and that her last hospital admission for asthma related

problems was two (2) years ago.  (Tr. 141.)

Finally, on August 21, 2004, Ashley presented to the emergency room and

eventually admitted to Children's Hospital for exacerbation of asthma with symptoms of cough,

nasal congestion, wheezing, and shortness of breath.  (Tr. 218-222.)  Records reflect her

condition was stable and improved with treatment.  This is the last record of any asthma related

medical attention concerning Plaintiff.

At the request of the state agency, Dr. Alan Blitstein examined Ashley on August 20, 2003.  (Tr. 151-53.)  Ashley's mother indicated that Ashley's asthma began around five years of age and that she was hospitalized twice in the first two years of her asthma.  She also indicated that Ashley's last hospitalization was approximately two years ago and that the asthma has greatly diminished in frequency.  Ashley "basically gets some wheezing problems when the weather changes or when she has a cold.  It averages may be every four to six months she may get asthma exacerbation."  (Tr. 152.)  Plaintiff's mother further reported that Ashley was in regular classes but was doing poorly in school.  She has been told that Ashley has a learning disability.  Ashley is not on any medication for attention deficit disorder.  Dr. Blitstein indicated that Plaintiff's speech was intelligible and reported no problems with her hearing.  Upon physical examination, Dr. Blitstein noted normal head, nose, and throat.  External ear showed no deformities, and nostrils, eyes, and oral cavity were normal.  Dr. Blitstein noted no evidence of infection or inflammation.  Heart and respiratory rates were normal and there were no adventitious sounds appreciated on inspiration or expiration, anteriorly or posteriorly.  Neurologically, Plaintiff was grossly intact.  In summary, Dr. Blitstein noted mild to moderate asthma.  (Tr. 151-53.)

In October 2003, Dr. Isabel Aure and Dr. Roger Glover reviewed Plaintiff's records and advised that her impairments did not  medically  or functionally meet any listing, indicating that Ashley had no limitations or less than marked limitations in all six domains.  (Tr. 154-57.)

In December 2004, Dr. Charles Cohen, a psychologist,  evaluated Ashley at the request of the state agency.  (Tr. 164-68.)  She was initially inhibited, and more spontaneous as

the interview continued.  She showed no signs of oppositional behavior.  A mental status

examination revealed that Ashley tended to answer some questions quickly and without much

thought, but there were no particular signs of hyperactivity.  She demonstrated good eye contact

and her speech was spontaneous.  Ashley denied problems with appetite, sleep, or energy level,

and she did not appear to be depressed or anxious.  Thought productivity was a bit rapid but she

was goal directed and coherent.  Her abstract thinking was somewhat below average and her

general fund of information was poor.  She could perform simple addition, subtraction, and

multiplication tables.  Dr. Cohen assessed her judgment as poor.  Testing on the WISC-III

revealed a Verbal IQ of 70, a Performance IQ of 87, and Full Scale IQ of 76 placing Ashley

overall in the borderline intellectual range.  WRAT3 testing indicated that Ashley is learning at a

level generally commensurate with her overall intellectual functioning.  In the Medical Resource

Functional Assessment Statements section of his report, Dr. Cohen noted that Ashley takes

special education classes as well as speech therapy.  Her mother indicated that her grades are

very poor, but Dr. Cohen noted that Ashley's achievement during the evaluation was relatively at

the expected level.  He further indicated that she is likely to be considered a learning disabled

child at school, but she does appear to be interested in school and does her homework

independently.  There are no complaints concerning behavior; she is independent in terms of

personal grooming and in tying her own shoes.  Dr. Cohen's diagnoses included Learning

disorder, NOS, rule out attention-deficit/hyperactivity disorder; and overall borderline

intellectual functioning.  Dr. Cohen's prognosis was guarded.  He indicated that Plaintiff was

very pleasant, with no signs of oppositional behavior.  He noted a significant difference between

her Verbal and Performance IQ with some lag in her verbal development, although achievement

testing was within expectations on the Wide Range Achievement Test.  Plaintiff did answer

questions quickly and there may be some level of mild hyperactivity and problems with

attention; however, they did not appear to be severe.  Dr. Cohen indicated that Ashley will

continue to need special education.


    2.  <u>Summary of School Records</u>

    Ashley's fifth grade report card for the 2002-2003 academic year reflects that she

was absent 17 days and tardy for a total of 9 days.  (Tr. 80.)  She struggled with Math, Language

Arts, and Reading for the first three marking periods and improved in the fourth, wherein she

was absent the fewest number of days.  Her work in Social Sciences and Science was

consistently satisfactory or better.  Ashley was also rated satisfactory or better in listening and

following directions, following class rules and school rules, following safety rules, cooperating

with adults, demonstrating courtesy and respect for others, getting along with other students,

demonstrating respect for school property, using books and materials appropriately, accepting

responsibility for actions, and completing and returning homework.  (Tr. 80.)

    In June 2003, Dr. Dorey Whealan-Buell, a school psychologist, conducted a

multidisciplinary evaluation at the mother's request, and an Individual Education Program (IEP)

for the 2003-2004 school year was developed and approved.  (Tr. 89-110.)  WISC-III

intelligence testing showed a Verbal IQ score of 85, a Performance IQ score of 87, and a Full

Scale IQ of 85.  Plaintiff was performing below expectancy in areas of Reading and Language

Arts and doing poorly in Math.  The evaluation team, which included Dr. Whealan-Buell,

recommended part-time special education and speech and language therapy.  The report also

noted that Ashley's attendance at school has been historically poor, missing 31 days in grade 2, 23 days in grade 3, 24 days in grade 4, and 17 days in grade 5. Reportedly, asthma has caused Ashley to miss school. (Tr. 101.) It was also recommended that Ashley follow-up with her primary care physician regarding difficulties with attention, concentration, and impulsivity documented during the evaluation. The team noted that "[i]ssues of attendance are of primary importance and need to be addressed." (Tr. 108.)

On September 24, 2003, Ashley's homeroom teacher completed a "Teacher/Counselor Questionaire" for the Social Security Administration (SSA). (Tr. 81-84.) Ashley's homeroom teacher reported that Ashley was mainstreamed in Social Studies, Science, Gym, Art and Music. He further indicated that Ashley receives special education services for Language and Math and that she receives speech therapy. The teacher described Ashley's classroom behavior as cooperative, sitting and doing her work. He noted that she has problems with comprehending assignments but seeks clarification from the teacher. Ashley reportedly pays attention in class but can be distracted by those around her, completes all assignments with some difficulty, and gets along well with this teacher and fellow students. She did not require a special seating arrangement and has no difficulty in moving about the school building or grounds. (Tr. 81-84.)

Kelly Sestric, Speech-Language pathologist at Turner Elementary School, completed a speech questionaire for the SSA on September 25, 2003. (Tr. 85-88.) Sestric reported a moderately severe speech-language disorder in the area of semantics. Oral-motor behavior, pitch, voice and mean length of utterance (MLU), were all within normal limits. Articulation errors were age appropriate. She received speech therapy twice a week. Sestric

further indicated Ashley's prognosis was good.  (Tr. 87.)

Ashley's IEP for the 2005-2006 academic year reflects that she was mainstreamed in all subjects except Science and Math.  Although the IEP characterizes Ashley's expressive and receptive vocabulary deficit as mild, it indicates that she will continue to need speech and language support twice per month to improve her vocabulary skills so as not to negatively impact her ability to understand classroom material and effectively communicate.  Her strengths were identified as articulation, fluency, and vocal quality.  In 2003-2004, Ashley used targeted vocabulary in sentences with 87% accuracy.  The IEP continues as follows:

> Currently, Ashley identifies targeted vocabulary when given a description/definition with 87% accuracy, and uses targeted vocabulary with 85% accuracy.  When given the Screening Test of Adolescent Language on 3/3/05, Ashley scored 17.5 points above criterion for her grade level.  She scored above criterion for all subgroups including vocabulary, auditory memory, language probes, and proverbs explanation.  Ashley has met criterion for her speech and language goals, however continues to need verbal prompting to maintain her skills.

(Tr. 250.)  In April, 2005, David Momper, School Psychologist, indicated that Ashley continues to remain eligible and in need of special education.  He noted that Ashley's teacher felt that Ashley's difficulties in regular education was due, in part, to learning deficits as well as weak attentional skills.  (Tr. 258.)

3. <u>Summary of Hearing Testimony</u>

On March 30, 2005, a hearing was held before the ALJ.  Plaintiff and her mother were present and represented by TAM Disability Consultants.  Plaintiff's mother testified that her school attendance was poor due to her asthma.  (Tr. 267.)  The ALJ instructed Plaintiff to

provide any medical records that document Plaintiff's asthma condition as soon as possible, as those currently of record reflected that Plaintiff's asthma is mild and well controlled with medication.  (Tr. 271-73.)  There was also testimony that Plaintiff has a borderline IQ,  (Tr. 273-74) and that she has missed between 17 and 31 days of school every year due to her asthma.  (Tr. 274-75.)  The ALJ commented that the documents do not reflect that Plaintiff's asthma would prevent Plaintiff from attending school on a regular basis.  (Tr. 275.)  Plaintiff directed the ALJ to school records that were submitted the day of the hearing which document that Plaintiff has missed only five (5) days of school since the beginning of the 2004-2005 academic year.  (Tr. 276.)  In addition, Plaintiff's mother indicated that Ashley does not take medication for ADHD because of her asthma medications.  Further, records reflect that the school psychologist indicated that Plaintiff is clinically significant for ADHD, but there has been no diagnosis of ADHD.  (Tr. 278-79.)

At the conclusion of the hearing, the ALJ indicated the following with regard to the submission of further documentation to support the Plaintiff's claim:

> ALJ:    Anyway, I'm calling all this to your attention so you can prepare the case better, and I will welcome anything further.  I'm going to delay issuing my decision in this case under the circumstances.  I think if you wish to pursue this matter further, I would suggest very much that you obtain additional records from any qualified practitioner indicating that the Claimant's poor performance in school has nothing to do with her failure to attend school, and is due in fact to her low IQ.  If you can obtain something that will indicate that the Claimant's poor performance was because of her IQ, cognitive functioning, intellectual functioning.  I'm not insisting on showing the Claimant is ADHD.  I think that's pretty much not going to go anywhere, but if you can actually show me that despite attendance on a regular basis at school she just can't function, she has impaired ability to learn . . . , acquiring and using information, and . . . attending and completing tasks, . . . or anything else within the 416.926(a) category, I would welcome that.  I'll keep the record open for 3 weeks from today for anything further you wish to submit.  And if you run into difficulty with the school district, if you need more time, I would be happy to give you additional

9

time . . ..  Also, I will welcome anything that indicates any further hospitalizations
because of asthma exacerbations.  The hospital records of August 21st, 2004, do
not actually show the Claimant was hospitalized because of asthma. . . .

(Tr. 284-85.)

No additional information was provided to the ALJ.


        4.  <u>Summary of Evidence Submitted to the Appeals Council but not to the ALJ</u>

        Evidence submitted only to the Appeals Council and not to the ALJ was limited
to a neurobehavioral assessment report prepared by Stacey Munsie, MSW, LSW, of her
evaluation of Plaintiff on April 28, 2005, almost a month after the March 30, 2005 hearing
before the ALJ.

(Tr. 259-61.)  Ashley was accompanied by her mother who reported her concerns with Ashley's
attention skills and poor school work.  Ashley's mother completed two parent rating and
assessment forms with responses that indicated significant difficulty with cognition/inattention
and with hyperactivity/impulsivity and marked elevation on the Connors' ADHD Index.  Ashley
completed a self report form with responses endorsing problems with distractibility,
concentration, staying on task, organizational skills and academic struggles.  The teacher
assessment form was significant for only mild to moderate inattention concerns and learning
difficulties.  Clinical observations included appropriate conversation, language, and social skills.
Ashley reported that she likes to play basketball and video games.  She reported having many
friends at school and being close with her family.  Under conclusions and recommendations, the
evaluator indicated that Ashley "presents with symptoms of inattention that affect her ability to
organize her belongings and tasks, poor attention and distractibility.  She does meet the

diagnostic criteria for mild to moderate Attention Deficit/Hyperactivity Disorder, Primarily

Inattentive Type."  (Tr. 259-261.)


      B.  <u>Standard of Review</u>

           The standard of judicial review is whether the Commissioner's decision is

supported by substantial evidence.  42 U.S.C. § 405(g); <u>Richardson v. Perales</u>, 402 U.S. 389, 401

(1971); <u>Smith v. Califano</u>, 637 F.2d 968, 970 (3d Cir. 1981.  Substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

<u>Richardson</u>, 402 U.S. at 401; <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999) (quoting

<u>Pierce v. Underwood</u>, 487 U.S. 552 (1988)); <u>Smith</u>, 637 F.2d at 970; <u>Dobrowolsky v. Califano</u>,

606 F.2d 403, 406 (3d Cir. 1979).  "Substantial evidence" is more than a "scintilla."  <u>Jesurum v.</u>

<u>Secretary of United States Dep't of Health and Human Servs.</u>, 48 F.3d 114, 117 (3d Cir. 1995);

<u>Stunkard v. Secretary of</u> <u>Health and Human Servs.</u>, 841 F.2d 57, 59 (3d Cir. 1988); <u>Smith</u>, 637

F.2d at 970.  If supported by substantial evidence, the Commissioner's decision must be

affirmed.


      C.  <u>Discusssion</u>

           Ashley's mother argues that the Commissioner's decision is not supported by

substantial evidence because (1) "Ashley has impairments which meet, medically equals or

functionally equals in severity the criteria for impairments in the 'Listing of Impairments,'

Appendix 1 of Subpart P of the 20 C.F.R, Part 404."  (Doc. No. 11 at ¶ 2.)  She contends that

"Ashley suffers from Attention Deficit Hyperactivity Disorder (ADHD), speech and language

delay, asthma and a learning disability," is disabled and entitled to child's SSI based on Listings 112.11 (ADHD) and 112.02 (Organic Mental Disorders); and (2) because the SSA found Ashley entitled to child's SSI from August 1, 2005 to the present based upon ADHD, speech and language delay, asthma and a learning disability, her disabilities existed prior to this time and at least as early as July 1, 2003.  (Doc. No. 11 at ¶ 9.)  Defendant, however, argues that the Commissioner's decision is supported by substantial evidence, and that evidence submitted to the Appeals Council but not to the ALJ may not be considered by this Court.

Disability for children is determined by considering first whether the child is performing substantial gainful activity.  20 C.F.R. § 416.924(b).  Second, the child must have a medically determinable impairment that is severe.  20 C.F.R. 416.924(c).  Finally, the child's "impairment(s) must meet, medically equal, or functionally equal the listings."  20 C.F.R. § 416.924(d).  Functional equivalence for a child is determined by considering how the child functions in her activities in six broad areas or domains, including, (i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and (vi) Health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  An impairment is functionally equivalent to a listed impairment if a child demonstrates "marked" limitations in two of the above domains or "extreme" limitations in one domain.  20 C.F.R. 416.926a(a).  A marked limitation in a domain is one that interferes seriously with Plaintiff's ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(2).  An extreme limitation in a domain is one that interferes very seriously with Plaintiff's ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(3).

In the instant case, Plaintiff has satisfied step one because the ALJ found that Plaintiff has never performed substantial gainful activity.  (Tr. 19, Finding No. 2.)  At step two, ALJ Melvin Rosenberg indicates in Finding No. 3 that Plaintiff has asthma and dull normal intellectual functioning but no severe impairment within the meaning of 20 C.F.R. § 416.924(c). At page 5 of his decision, however, he notes that Plaintiff "does not have any severe impairment other than those related to her home environment with smoking exposure related asthma and lack of regular attendance at school, affecting performance in school."  (Tr. 18 at ¶ 2.)  Defendant, in her Brief in Support of Motion for Summary Judgement, Doc. No. 15 at p. 3, apparently construes this ambiguity in Plaintiff's favor when she indicates that the ALJ found that Plaintiff had a severe impairment, and that "the only issue in this case is whether substantial evidence supports the ALJ's step three determination that the Plaintiff was not disabled."  (Doc. No. 15 at 3.)  Consequently, this Court will confine its analysis to step three of the sequential analysis for determining disability in children.

The record is replete with evidence supporting the ALJ's decision.

First, there is no record evidence that Plaintiff's impairments met or medically equaled listings 112.02 (organic mental disorders) or 112.11 (ADHD).  In fact, Dr. Aure and Dr. Glover indicated that Ashley's impairments or combination of impairments did not meet or medically equal any listing.  (Tr. 154.)  Further, as to Listing 112.02 (organic mental disorders), there is absolutely no record evidence of "[a]bnormalities in perception, cognition, affect, or behavior associated with dysfunction of the brain.  The history and physical examination or laboratory tests, . . . demonstrate or support the presence of an organic factor judged to be etiologically related to the abnormal mental state . . .."  See Listing 112.02.  As to Listing 112.11

13

(ADHD), Plaintiff fails to meet the requirements contained therein.  That is, there is no record

evidence of <u>medically documented findings</u> of marked inattention, and marked impulsiveness,

and marked hyperactivity.  <u>See</u> Listing 112.11A (emphasis added).  On the contrary, Dr. Cohen

ruled out ADHD.  (Tr. 168.)

          In addition, Plaintiff appears to rely on the April 28, 2005 neurobehavioral

assessment report prepared by Stacey Munsie, MSW, LSW, conducted almost a month after the

hearing before the ALJ.  This Court may not consider this report, however, in its assessment of

whether the ALJ's decision is supported by substantial evidence.  The United States Court of

Appeals for the Third Circuit has held that when a plaintiff relies on evidence not presented to

the ALJ, a district court may remand the case pursuant to sentence six of 42 U.S.C. § 405(g), if

the plaintiff can show that the evidence is not only new and material, but also that there is good

cause for failure to present such evidence in the proceeding before the ALJ.[2]  <u>Matthews v. Apfel</u>,

239 F.3d 589, 594 (3d Cir. 2001).  The <u>Matthews</u> Court articulated the policy consideration

---

[2]Sentence six of 42 U.S.C. § 405(g) provides as follows:

The court may, on motion of the Commissioner of Social Security made for good
cause shown before the Commissioner files the Commissioner's answer, remand
the case to the Commissioner of Social Security for further action by the
Commissioner of Social Security, and <u>it may at any time order additional
evidence to be taken before the Commissioner of Social Security, but only upon a
showing that there is new evidence which is material and that there is good cause
for the failure to incorporate such evidence into the record in a prior proceeding</u>;
and the Commissioner of Social Security shall, after the case is remanded, and
after hearing such additional evidence if so ordered, modify or affirm the
Commissioner's findings of fact or the Commissioner's decision, or both, and
shall file with the court any such additional and modified findings of fact and
decision, and a transcript of the additional record and testimony upon which the
Commissioner's action in modifying or affirming was based.

42 U.S.C. § 405(g) (emphasis added).

underlying its holding as follows:

> [I]t is a much sounder policy to require claimants to present all material evidence to the ALJ and prohibit judicial review of new evidence unless there is good reason for not having brought it before the ALJ.  Such a holding is instrumental to the speedy and orderly disposition of Social Security claims.

239 F.3d at 595.  The Court emphasized that evidence not presented to the ALJ "'cannot be used to argue the ALJ's decision was not supported by substantial evidence.'"  Matthews, 239 F.3d at 594-95 (quoting Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991)).  Instead, the plaintiff must make the requisite showing to the district court before the district court may remand to the ALJ where such new and material evidence will be considered.  See 42 U.S.C. § 405(g).

Evidence is new if it is not cumulative of evidence already in the record and was capable of being produced to the ALJ.  See Szubak v. Sec'y of Health and Human Servs., 745 F.2d 831, 833 (3d Cir. 1984) (medical reports compiled after Secretary's first decision considered new in that they could not have been presented at the hearing).  Evidence is material if it is not only relevant and probative, but also of such consequence that there is a "reasonable probability that the new evidence would have changed the outcome of the Secretary's determination."  Id. (evidence material where it appeared to corroborate plaintiff's subjective complaints of pain).

Good cause has been defined by the Matthews court as some justification for the Plaintiff's failure to have obtained and presented the evidence to the ALJ.  239 F.3d at 594-95. In Matthews, the Third Circuit Court of Appeals affirmed the district court's finding that Matthews had failed to show good cause for not presenting evidence to the ALJ.  Id. at 595. There, "the Magistrate Judge noted that Matthews had not explained why she did not attempt to

obtain [a vocational expert's] evaluation at a time when it could be considered by the ALJ."[3]  Id.

Adopting the Magistrate Judge's Report, the District Court agreed that plaintiff failed to satisfy

her burden of showing good cause.  Id.  In affirming the District Court, the Third Circuit Court

of Appeals noted the following:

> But Matthews should have known that her ability to work was an issue at the ALJ
> hearing that was held after remand by the Appeals Council.  Indeed, a vocational
> expert had testified on July 11, 1996 (at the second ALJ hearing) that Matthews
> could perform cashier and similar types of jobs.  By then, it should have been
> clear to Matthews that her arithmetic and reading skills were relevant.  The ALJ
> even kept the administrative record open to allow Matthews to submit additional
> evidence.  Yet Matthews did not submit [the vocational expert's] report until
> more than seven months after the ALJ's adverse decision.  Therefore, we agree
> with the District Court that Matthews has not shown any good cause why she did
> not obtain this evidence for the ALJ proceeding.

Id. at 595.

Similarly, Plaintiff here has failed to show good cause as to why the

neurobehavioral assessment was not submitted to the ALJ.  As early as June 2003, Dr. Whealan-

Buell, school psychologist, recommended that Ashley's mother follow-up with her primary care

physician regarding documented difficulties with attention, concentration and impulsivity.  (Tr.

108.)  By this date, subsequent to the filing of the application for SSI, Plaintiff's mother would

have been placed on notice that issues concerning ADHD could become relevant.  Nowhere in

her submissions to this Court does Plaintiff provide information as to when she attempted to

---

[3]At the administrative level, the ALJ had found that Matthews was not disabled and that
she could perform sedentary, unskilled jobs in a low-noise environment, including work as a
cashier in a small office.  Thereafter, Matthews filed a request for review with the Appeals
Council.  More than seven (7) months after the ALJ's decision, Matthews then submitted a
report from a vocational expert "who stated that Matthews lacked the requisite arithmetic and
reading skills to work as a cashier."  Matthews, 239 F.3d at 591.  The vocational expert also
noted that "Matthews' exertional and nonexertional impairments would preclude her from
performing any other gainful work activities in the national economy."  Id.

schedule this evaluation with Children's Hospital and Ms. Minsie, why it was not scheduled

sooner, and most importantly, why Plaintiff did not notify the ALJ that she needed more time to

secure the evaluation and subsequent report.  At the hearing, the ALJ clearly encouraged the

Plaintiff to obtain addition records from qualified practitioners to support her contentions that

"despite attendance on a regular basis at school she just can't function, she has impaired ability

to learn . . . , acquiring and using information, and . . . attending and completing tasks, . . . or

anything else within the 416.926(a) category."  (Tr. 284-85.)  Further, the ALJ also emphasized

that he would keep the record open for at least three weeks, and instructed Plaintiff to notify him

should she need more time.  (Tr. 285.)  Yet, there is no evidence in the record that Plaintiff ever

attempted to notify the ALJ regarding a request for more time to secure the report.

       Consequently, this Court, in light of the policy consideration articulated by the

United States Court of Appeals for the Third Circuit in <u>Matthews</u>, cannot recommend that this

case be remanded pursuant to sentence six of 42 U.S.C. § 405(g).  <u>See</u> <u>Matthews</u>, 239 F.3d at

595.

       Further, there is ample record evidence to support the ALJ's finding that

Plaintiff's impairments do not functionally meet a listing.  As noted above, a Plaintiff's

impairments must be marked in two of the six domains, or extreme in just one domain for

impairments to functionally meet a listing.  Here, Dr. Aure and Dr. Glover specifically indicated

that Plaintiff's impairments did not functionally meet any listing, indicating that Ashley had no

limitations in the domains of moving about and manipulating objects, and caring for yourself.

(Tr. 157.)  In addition, they found less than marked limitations in the domains of acquiring and

using information, attending and completing tasks, interacting and relating with others, and

health and physical well-being.  (Tr. 156-57.)

   Moreover, the examination findings of Dr. Blitstein and Dr. Cohen also support the ALJ's conclusion that Plaintiff's impairments do not functionally meet a listing.  Dr. Cohen specifically ruled out attention-deficit/hyperactivity disorder, and indicated that although there may be some level of mild hyperactivity and problems with attention, they did not appear to be severe.  He noted no signs of oppositional behavior; she has friends and gets along well with family members.  He noted no articulation problems, that her speech was spontaneous and that eye contact was good.  (Tr. 165.)  Ashley denied problems with appetite, sleep, energy level, hallucinations or illusions.  (Tr. 165.)  Dr. Cohen also noted that Ashley was goal-directed and coherent.  She denied suicidal or homicidal ideas.  (Tr. 165.)  She was oriented in person, place and time, and her remote and recent past memory were grossly intact.  (Tr. 166.)  She could perform simple subtraction, addition, and multiplication tables.  (Tr. 166.)  He concluded that she is learning at a level generally commensurate with her overall intellectual functioning.

   Dr. Blitstein reported that Ashley was cooperative, intelligible, with no apparent hearing problems, and full range of motion of all joints.  He indicated mild to moderate asthma. (Tr. 151-53.)

   Plaintiff's mother also indicates in the record that Ashley has no behavioral problems and receives no complaints from teachers regarding Ashley attending to tasks.  (Tr. 165.)  Plaintiff's mother consistently reports that Ashley is a happy child and does her homework independently.  (Tr. 165.)  By August 2003, Plaintiff's mother reported that Ashley's asthma has greatly diminished in frequency.  (Tr. 152.)  In March 2004, Plaintiff's mother indicated that Ashley could maintain attention and/or concentration in finishing projects, putting puzzles

together, reading books, remembering a story, and playing games, but had difficulty with attention and concentration when watching an entire television show.  (Tr. 115.)  She also indicated that Ashley can dress herself, and gets along well with family, and friends.  (Tr. 115.)

Ashley's speech and language therapist reported that by March 2005, Ashley had met all the criteria for the specified speech and language goals and that she scored above her grade level on the Screening Test of Adolescent Language.  (Tr. 250.)

Finally, Plaintiff argues that because the SSA has found Ashley entitled to child's SSI from August 1, 2005 to the present based upon ADHD, speech and language delay, asthma and a learning disability, her disabilities existed prior to this time and at least as early as July 1, 2003.  (Doc. No. 11 at ¶ 9.)  The issue before this Court, however, is whether the June 24, 2005 decision of the ALJ is supported by substantial evidence in the record.  The only relevant time period at issue runs from June 23, 2003 (the protective filing date), through the date of the ALJ's decision, June 24, 2005.  Consequently, this Court is limited in its review to the record as presented to the ALJ.  See Matthews, 239 F.3d at 594-95.  Cf. 20 C.F.R. § 404.620(a)(2) (providing that remedy for claimant who meets disability requirements after period in which her application was in effect is to file a new application).  That Plaintiff may have become subsequently disabled does not support reversal or remand as to the Decision at issue.[4]

Based upon the above discussion, the medical and school record evidence

---

[4]The Court notes that assessment of the soundness of the subsequent award of benefits is not before it.  Indeed, that decision is not even of record.  Cf. Jacks v. Barnhart, 2004 WL 2200944 *2 n.1 (N.D. Cal. Sept. 15, 2004) (noting that Court had "no means by which to determine" how subsequent award of SSA disability related to prior benefit denial and that, moreover, subsequent award of benefits was not material) (citing Bruton v. Massanari, 268 F.3d 824, 827 (9th Cir. 2001) (holding that remand was not warranted based on subsequent award of benefits for different time period on different medical evidence)).

referenced in the ALJ's decision formed a sufficient basis for determining the Ashley does not

have any marked or extreme limitations an any domain of functioning.  The record also contains

additional evidence that could support his determination.  Therefore, the ALJ's conclusion that

Plaintiff does not have an impairment which is functionally equivalent to any listed impairment

is supported by substantial evidence.


III.    <u>CONCLUSION</u>

        For the reasons stated above, it is recommended that the Motion for Summary

Judgment filed by Plaintiff at Doc. No. 11 be denied.  It is further recommended that the Motion

for Summary Judgment filed by Defendant at Doc. No. 14 be granted and that the decision of the

Commissioner denying child's Supplemental Security Income (SSI) benefits to the minor

Plaintiff be affirmed.

        In accordance with the Magistrate's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and

Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the

date of service to file objections to this Report and Recommendation.  Any party opposing the

objections shall have ten (10) days from the date of service of objections to respond thereto.

Failure to file timely objections may constitute a waiver of any appellate rights.

 

LISA PUPO LENIHAN
United States Magistrate Judge


Dated: February 22, 2007

20

cc: The Honorable Joy Flowers Conti
   United States District Court Judge


   Elvia M. Johnson
   1210 Sherman Street
   Pittsburgh, Pa 15221
   Pro Se


   All counsel of record